UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/16

ADIL ELMESSAOUDI,

Plaintiff,

- against -

MARK 2 RESTAURANT LLC,

Defendant.

**MEMORANDUM
OPINION & ORDER**

14 Civ. 4560 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Adil Elmessaoudi worked as a "food runner" at the Mark restaurant, located at 25 East 77th Street in Manhattan.  Plaintiff claims that Defendant Mark 2 Restaurant LLC – which owns and operates the Mark – committed disability discrimination by refusing to offer him a work schedule that would permit him to attend his therapy sessions.  Plaintiff also claims that his supervisor, Vidal Jimenez, sexually harassed him at work.  Finally, Plaintiff claims that his employment was terminated in retaliation for his accommodation request and for complaining about Jimenez's sexual harassment.

The Complaint asserts claims for disability discrimination, sexual harassment, and retaliation under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), et seq. (the "NYCHRL").

Defendant Mark 2 Restaurant LLC ( the "Mark" or the "Company") has moved for summary judgment on Plaintiff's disability discrimination and retaliation claims, and on the issue of whether Plaintiff's failed to mitigate his damages.

## BACKGROUND

### I.    FACTS

#### A.    Plaintiff's Request for a Work Schedule Accommodation

In April 2012, Plaintiff Adil Elmessaoudi was hired as a "food runner" at the

Mark, a restaurant owned and operated by Defendant. (Pltf. Resp. to Def. R. 56.1 Statement

(Dkt. No. 54) at ¶ 1[1]) Between his April 2012 start date and September 2012, Plaintiff's shift on

Wednesdays generally began at either 4:00 p.m. or 5:00 p.m. (Id. at ¶ 2; Timecard Report (Dkt.

No. 49-2) at ECF 20-29)

In September 2012, Plaintiff asked his supervisor, Vidal Jimenez, for permission

to report later on Wednesdays, so that he could attend therapy sessions. According to Plaintiff,

Jimenez refused to make any accommodation for Plaintiff's therapy sessions. (Wolnowski

Decl., Ex. A (Elmessaoudi Dep., Dkt. No. 52-1) at 131:7-10)

On September 14, 2012, Plaintiff brought his request for an accommodation to

Anne Donovan – the Mark's Human Resources Director. Plaintiff explained that he needed to

report to work later on Wednesdays, so that he could attend therapy sessions that were designed

to address anxiety issues.[2] (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶¶ 3-4)

Plaintiff also provided Donovan with the following note from his therapist, Laura Leone:

> To whom it may concern, this is to inform you that Adil Elmessaoudi is scheduled
> to attend weekly ongoing counseling with Laura Leone LMSW [Licensed Master

---

[1] To the extent that this Court relies on facts drawn from one party's Local Rule 56.1 Statement, it has done so because the opposing party has either not disputed those facts or has not done so with citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

[2] Plaintiff concedes that he misrepresented the purpose of the therapy, which was to address anger management and not anxiety issues. (Id. at ¶ 8) Neither side has suggested that Plaintiff's misrepresentation concerning the purpose of the therapy has any significance for purposes of resolving Defendant's summary judgment motion.

Social Worker] on Wednesdays, from 5:00-6:15 p.m. It is requested that you please accommodate Adil to allow him to alter his work schedule or allow him to start his shift late on Wednesdays. We can provide weekly documentation of his attendance.

(Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 149:8-15, 150:3-14; Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶¶ 3-4)[3]

Plaintiff also told Donovan that his supervisor, Vidal Jimenez,[4] had "refused to accommodate me on Wednesdays." (Wolnowski Decl., Ex. A (Elmessaoudi Dep., Dkt. No. 52-1) at 131:7-10). According to Plaintiff, Donovan responded: "He can't do that. By law, you have rights. We have an obligation to accommodate you. That's exactly what she said. She said: I will talk to him." (Id. at 131:11-16) Donovan further assured Plaintiff that it would be "no problem" for Plaintiff to report to work after his therapy sessions, and that she would speak to Jimenez about the necessary schedule change. (Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 150:25-151:4; Def. Addendum to Appx., Ex. 6 (Donovan Dep., Dkt. No. 55) at 53:20-21) According to Donovan, she assured Plaintiff that he could arrive at work "no later than 6:15." (Def. Addendum to Appx., Ex. 6 (Donovan Dep., Dkt. No. 55) at 53:12-21)

Between September 19, 2012 – when Plaintiff's therapy sessions began – and December 19, 2012 – when his therapy sessions ended – Defendant set a Wednesday work schedule for Plaintiff that provided for his shift to begin at 6:00 p.m. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 10; Wolnowski Decl., Ex. A (Elmessaoudi Dep., Dkt. No. 52-1) at

---

[3] Plaintiff was attending group therapy sessions for anger management. (Def. Appx., Ex. 4 (Leone Dep.) (Dkt. No. 49-2) at 51:11-24)

[4] In the Complaint, Plaintiff describes Jimenez as the manager of the Mark and his supervisor (Cmplt. (Dkt. No. 1) at ¶ 12-13), and Defendant has not disputed these assertions. Accordingly, although neither side has cited evidence concerning Jimenez's position at the Mark, this Court assumes – for purposes of resolving Plaintiff's summary judgment motion – that Jimenez was Plaintiff's supervisor.

131:21-132:2)  Although Plaintiff's Wednesday work schedule provided for a 6:00 p.m. start time, he generally reported to work on Wednesdays at 6:15 p.m., and sometimes at 6:20 p.m. (Id. at ¶¶ 10-11)

At his deposition, Plaintiff testified that it took him "a half an hour" to travel from his therapy session to the Mark.  (Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 157:2-17)  According to Plaintiff, because of the travel time, he had to leave his therapy sessions at "maybe 5:30, 5:35, 5:40" in order to arrive at work by 6:15 or 6:20 p.m.  (Id.; see also Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 16)  At his deposition, Plaintiff also complained that his supervisor – Jimenez – told him that he had to report to work by 6:00 p.m. on Wednesdays. (Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 131:21-132:2)

Plaintiff never communicated to Donovan that the accommodation she had arranged for him was inadequate, however, nor did Plaintiff ever complain to anyone that Jimenez was not honoring the accommodation granted by Donovan.  (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 14)  Moreover, although Plaintiff arrived at work each Wednesday 15 to 20 minutes late, he was never subjected to discipline.  (Id. at ¶ 12)

According to Leone, Plaintiff's therapist, Plaintiff successfully completed the anger management group sessions and received a certificate of completion, which required that he attend 10 or more of the 12 sessions.  (Def. Appx., Ex. 4 (Leone Dep. (Dkt. No. 49-2) at 51:17-24)  Leone did not recall that Plaintiff had ever left a group session early.  (Id. at 53:10-13)

### B.    Jimenez's Sexual Harassment

Plaintiff testified that Jimenez "would slap and grab [his] buttocks," "pinch [his] nipples," and "kiss the back of [his] neck."  (Def. Appx, Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-

4

1) at 193:2-16)  Plaintiff objected to Jimenez's sexual advances.  (Wolnowski Decl., Ex. A
(Elmessaoudi Dep.) (Dkt. No. 52-1) at 196:14-25)

The Mark's employee handbook states "[i]f you feel you are being subjected to
unlawful harassment, speak to your supervisor, the restaurant General Manager, or Jean-Georges
Management's Director of Operations."[5]  (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at
¶ 37; Def. Appx., Ex. 1 (Employee Handbook, Dkt. No. 49-1) at ECF 58)  The employee
handbook provides a telephone number for employees to contact the Director of Operations.
(Id.)

Plaintiff did not report Jimenez's conduct to the Mark's General Manager or
Director of Operations, nor did he call the telephone number provided in the employee
handbook.  (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 39)  Instead, in "September
or October" of 2012, Plaintiff reported to Donovan, the Mark's Human Resources Director, that
Jimenez was sexually harassing him.  (Def. Appx., Ex. 1 (Elmessaoudi Dep. (Dkt. No. 49-1) at
193:17-194:9)  Donovan told Plaintiff that the conduct he described was "not acceptable" and
that she would "investigate."  (Id. at 194:10-13)[6]

Plaintiff testified that Jimenez later told him that "he was determined to get
[Plaintiff] fired."  (Wolnowski Decl., Ex. A (Elmessaoudi Dep., Dkt. No. 52-1) at 245:13-
246:20)

---

[5] The parties agree that the Jean-Georges employee handbook governs Mark employees.  (Def.
R. 56.1 Statement (Dkt. No. 49) at ¶ 6; Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 6)
[6] Donovan denies that Plaintiff ever reported to her that Jimenez had sexually harassed him.
(Def. Aug. 30, 2016 Ltr. (Dkt. No. 56) at ECF 2)

### C. Written Warnings and Termination

On October 2, 2012, Jimenez issued an Associate Corrective Action Report – a written warning – to Plaintiff for leaving his work station without first obtaining his manager's permission. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 22; Def. Appx., Ex. 2 (Associate Corrective Action Report, Dkt. No. 49-2) at ECF 42) On November 1, 2012, Plaintiff was issued a second Associate Corrective Action Report – with the "Final Warning" box checked – for throwing a ramekin into a container of ramekins after being instructed that doing so was "unacceptable."[7] (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 23; Def. Appx., Ex. 2 (Associate Corrective Action Report, Dkt. No. 49-2) at ECF 43)

On November 12, 2012, a third Associate Corrective Action Report was issued to Plaintiff, with the "Final Warning" box checked. This warning states that while Plaintiff was in line at the cafeteria, he insulted two female housekeeping workers and used profanity. The two co-workers allegedly "felt threatened" by his conduct. (Def. R. 56.1 Statement (Dkt. No. 49) at ¶ 25; Def. Appx., Ex. 2 (Associate Corrective Action Report, Dkt. No. 49-2) at ECF 44) Vidal Jimenez is listed on this Corrective Action Report as a witness to Plaintiff's alleged misconduct.[8] (Def. Appx., Ex. 2 (Associate Corrective Action Report, Dkt. No. 49-2) at ECF 44) The form also contains a notation that Plaintiff "denies having any interactions with any housekeepers and did not curse at anyone. He suggests looking at the [surveillance] camera." (Id.) Donovan testified that she does not recall whether anyone examined the video footage to resolve the

---

[7] The signature of the supervisor who signed this written warning is not legible. (See Def. Appx., Ex. 2 (Dkt. No. 49-2) at ECF 43)

[8] The signature of the supervisor who signed this written warning is not legible. (See Def. Appx., Ex. 2 (Dkt. No. 49-2) at ECF 44)

factual dispute between Plaintiff and the housekeepers.  (Wolnowski Decl, Ex. B (Donovan Dep., Dkt. No. 52-2) at 70:19-22)

On December 18, 2012, Plaintiff received a fourth Associate Corrective Action Report for arriving 40 minutes late for his 11:00 a.m. shift.  (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 26; Def. Appx., Ex. 2 (Associate Corrective Action Report, Dkt. No. 49-2) at ECF 41)

Defendant terminated Plaintiff's employment at the Mark on January 13, 2013. (Def. R. 56.1 Statement (Dkt. No. 49) at ¶ 27)  Donovan made the termination decision, with the approval of Olivier Lordonnois, the Mark's general manager.  (Def. Appx., Ex. 3 (Donovan Dep., Dkt. No. 49-2) at 26:12-15; 74:7-10)  Donovan told Plaintiff that he was being terminated because of threatening remarks he had made to co-workers.  (Id. at 74:7-16)

Donovan was questioned about Plaintiff's alleged misconduct at her deposition:

Q.  Can you tell me more about the allegation that he threatened his co-workers?

A.  He was in the cafeteria and he was making comments to them.  And they went to Vidal [Jimenez] and said that they were scared and that he was threatening them and Vidal brought them to me.

Q.  What type of comments did he make to them?

A.  Something about you tell anybody what happened and I'll get you for this. I can't remember exactly.

(Id. at 75:16-75)  Donovan further testified that she met with Plaintiff's three co-workers, who confirmed that Plaintiff had made threatening remarks; that they didn't feel comfortable with Plaintiff; and that they were afraid of Plaintiff.  (Id. at 76:22-77:6)  Donovan found the three co-workers' account of this incident credible.  (Id. at 77:12-13)

Donovan also met with Plaintiff, who denied threatening his co-workers. (Id. at 75:16-21) Donovan did not disclose to Plaintiff the names of the three co-workers who had complained about him, because they had asked her to keep their identities confidential. (Id. at 76:10-17) Donovan did not believe Plaintiff when he denied threatening his co-workers. (Id. at 77:7-11) She noted at her deposition that there were "three corroborating statements" indicating that he had threatened his co-workers. (Id. at 77:19-23)

### D.  Plaintiff's Work History After His Termination

Plaintiff worked at five restaurants after his employment at the Mark was terminated in January 2013. Plaintiff left each establishment during his training period, however. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 39)

Plaintiff also worked as a Licensed Practical Nurse (LPN) for Medical Dynamic, an agency that supplies LPNs to institutions such as nursing homes. Between September 2013 and September 2014, Plaintiff worked weekends for Medical Dynamic. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶¶ 40, 46; Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 269:13-270:15) Since February 2014, Plaintiff has also performed work for SeniorBridge, another agency that supplies LPNs. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 45) When he is on assignment for SeniorBridge, Plaintiff earns $25 per hour and works five twelve-hour shifts per week. (Wolnowski Decl., Ex. A (Elmessaoudi Dep., Dkt. No. 52-1) at 266:15-267:10) Plaintiff has not received an assignment from SeniorBridge since March 19, 2015, however. (Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 280:15-281:8)

Plaintiff has rejected LPN positions at St. Mary's in West Harlem – a nursing home for AIDS patients – and at Beth Abraham, a nursing home in the Bronx. (Pltf. Resp. to Def. R. 56.1 Statement (Dkt. No. 54) at ¶ 40; Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-

1) at 278:12-279:19) Plaintiff rejected the St. Mary's position because it did not pay overtime for holiday work, and he rejected the Beth Abraham position because it required computer skills that he did not possess. (Def. Appx., Ex. 1 (Elmessaoudi Dep., Dkt. No. 49-1) at 278:24-279:11, 279:22-25) In May 2015, Plaintiff signed up with a new agency, Preferred Homecare. (Id. at 267:11-15) He was assigned to a case "[i]mmediately," but requested that he be relieved a day later. (Id. at 267:16-21) He explained that "[i]t was far in Brooklyn, plus there was a problem with the case. It's not organized and I'm afraid for my license." (Id. at 267:22-268:2) At the time of Plaintiff's deposition in June 2015, he had not received any other assignments from Preferred Homecare. (Id. at 278:7-9)

## II.   PROCEDURAL HISTORY

The Complaint was filed on June 24, 2014, and alleged claims against the Mark, Jimenez, and Donovan for disability discrimination under the ADA and the NYCHRL, gender discrimination under Title VII and the NYCHRL, retaliation under Title VII, the ADA, and the NYCHRL, and aiding and abetting discrimination under the NYCHRL. (Cmplt. (Dkt. No. 1))

After discovery, and with the consent of Plaintiff, this Court dismissed all claims against Jimenez and Donovan. (Dkt. No. 38) Defendant then moved for summary judgment on Plaintiff's disability discrimination claims under the ADA and the NYCHRL; retaliation claims under the ADA, Title VII, and the NYCHRL; and aiding and abetting discrimination claim under the NYCHRL. (Dkt. No. 47)

Plaintiff does not oppose Defendant's motion for summary judgment on the aiding and abetting discrimination claim. (See Pltf. Opp. Br. (Dkt. No. 53) at ECF 7 n.1) Accordingly, Defendant's motion will be granted as to that claim.

9

## DISCUSSION

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact," and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In cases based on allegations of [discrimination and] discriminatory retaliation, courts must use 'an extra measure of caution' in determining whether to grant summary judgment[,] 'because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence.'" Thompson v. Morris Heights Health Ctr., No. 09 Civ. 7239(PAE)(THK), 2012 WL 1145964, at *4 (S.D.N.Y. Apr. 6, 2012) (quoting Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006)).

However, "'the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination [and discriminatory retaliation] cases than to . . . other areas of litigation.'" Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  As in any other case, a plaintiff raising claims of discrimination and retaliation "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'. . .  [H]e must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." Brown v. Henderson, 257

10

F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986)). "Mere conclusory statements, conjecture or speculation" by the plaintiff

will not defeat a summary judgment motion. Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58,

67 (S.D.N.Y. 2002); see also Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) ("Even

in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to

resist a motion for summary judgment.").

## II.    DISABILITY DISCRIMINATION CLAIMS

### A.    Americans with Disabilities Act Claim

"The ADA . . . require[s] an employer to afford reasonable accommodation of an

employee's known disability unless the accommodation would impose an undue hardship on the

employer." Noll v. Int'l. Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015). To maintain a claim

for failure to accommodate under the ADA, an employee must show that:

> "(1) [he] is a person with a disability under the meaning of the ADA; (2) an
> employer covered by the statute had notice of his disability; (3) with reasonable
> accommodation, [the employee] could perform the essential functions of the job
> at issue; and (4) the employer has refused to make such accommodations."

Id. (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009)),

"In the context of the ADA, reasonable accommodation may include, inter alia,

modification of job duties and schedules. . . ." McBride , 583 F.3d at 97 (citing 42 U.S.C.

§ 12111(9)(B)). "'Employees are not entitled to hold out for the most beneficial

accommodation, [however,] and [an] employer need not offer the accommodation that the

employee prefers. Instead, when any reasonable accommodation is provided, the statutory

inquiry ends.'" Turowski v. Triarc Companies, Inc., 761 F. Supp. 2d 107, 111 (S.D.N.Y. 2011)

(quoting Waltzer v. Triumph Apparel Corp., No. 09 Civ. 288(DLC), 2010 WL 565428, at *6

(S.D.N.Y. Feb. 18, 2010)). That being said, "'[o]rdinarily, questions of reasonableness are best

11

left to the fact finder.'" Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (quoting EEOC v. Universal Mfg. Corp., 914 F.2d 71, 73 (5th Cir. 1990)); see also Noll, 787 F.3d at 94 ("The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder.").

Here, Defendant does not dispute the existence of the first three elements: Plaintiff has a disability within the meaning of the ADA; his request to attend therapy sessions put Defendant on notice that Plaintiff has a disability; and Plaintiff was able to perform the essential functions of his job as a "food runner." Defendant contends, however, that it made a reasonable accommodation for Plaintiff by scheduling his Wednesday shifts to commence at 6:00 p.m., and by permitting him to begin work at 6:15 or 6:20 p.m., all of which allowed Plaintiff to successfully complete his therapy program. (Def. Sum. J. Br. (Dkt. No. 48) at ECF 14-15)

Plaintiff contends, however, that the 6:00 p.m. shift change on Wednesdays, and the 15 to 20 minute grace period, was not a reasonable accommodation. Plaintiff complains that he was forced to leave his therapy sessions early – between 5:30 and 5:40 p.m. – in order to arrive at work by 6:15 or 6:20 p.m. (Pltf. Opp. Br. (Dkt. No. 53) at ECF 20) Moreover, Plaintiff alleges that his supervisor, Jimenez, instructed him to arrive at the Mark by 6:00 p.m.

"'[T]he ADA contemplates that employers will engage in an "interactive process" with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated.'" Nassry v. St. Luke's Roosevelt Hosp., No. 1:13-cv-4719-GHW, 2016 WL 1274576, at *11 (S.D.N.Y. Mar. 31, 2016) (quoting Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008)). "In circumstances where there is an alleged breakdown of the interactive process, 'courts should look for signs of failure to participate in good faith or

12

failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.'" Schroeder v. Suffolk Cnty. Community Coll., No. 07-CV-2060 (JFB)(WDW), 2009 WL 1748869, at *14 (E.D.N.Y. June 22, 2009) (citing Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir. 1996)).

"'Liability for failure to provide a reasonable accommodation ensues only when the employer is responsible for a breakdown in that process.'" Goonan v. Fed. Reserve Bank of New York, 916 F. Supp. 2d 470, 480 (S.D.N.Y. 2013) (citing Thompson v. City of New York, No. 03 Civ. 4128(JSR)(JCF), 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006), report and recommendation adopted, No. 03 Civ. 4128, 2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006), aff'd sub nom. Thompson v. New York City Dept. of Prob., 348 Fed. Appx. 643 (2d Cir. 2009)). "'An employer impedes the process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith.'" Id. (quoting Bohen v. Potter, No. 04-CV-1039S, 2009 WL 971356, at *13 (W.D.N.Y. Mar. 23, 2009)); see also Nassry, 2016 WL 1274576, at *11.

"[A]n employee's request for an accommodation 'triggers a responsibility on the employer's part to investigate that request and determine its feasibility.'" Nassry, 2016 WL 1274576, at *11 (quoting Parker v. Columbia Pictures Industries, 204 F.3d 326, 338 (2d Cir. 2000)). "While the ADA 'does not require the employee to provide every accommodation a disabled employee may request,' it does require that 'the accommodation provided is reasonable.'" Scalera v. Electrograph Sys., Inc., 848 F. Supp. 2d 352, 368 (E.D.N.Y. 2012) (quoting D'Eredita V. ITT Corp., 370 Fed. Appx. 139, 141 (2d Cir. 2010)).

13

Here, it is undisputed that when Plaintiff approached Donovan – the Mark's Human Resources Director – about a schedule accommodation on Wednesdays, she told him that his request was granted, and that she would speak with Plaintiff's supervisor about arranging for a schedule change on Wednesdays. Plaintiff's Wednesday work schedule was subsequently changed: instead of a 4:00 or 5:00 p.m. start time on Wednesdays, Plaintiff's schedule was adjusted to provide for a 6:00 p.m. start time. It is also undisputed that – despite the scheduled start time of 6:00 p.m. on Wednesdays – Defendant permitted Plaintiff to begin his work on Wednesdays at 6:15 or 6:20 p.m.

It is also undisputed that Plaintiff never complained to Donovan or anyone else at the Mark that the accommodation granted by Donovan was inadequate. Moreover, while Plaintiff now alleges that it took him a half hour to travel from his therapy session to the Mark, there is no evidence that he ever told Donovan or anyone else at the Mark that he would have to leave his therapy sessions early if he was to report to work by 6:15 or 6:20 p.m. Had Plaintiff complained to Donovan that the accommodation was inadequate, there is every reason to believe that she would have authorized a later start time: it is undisputed that Donovan explicitly informed Plaintiff that he would be permitted to start work after his therapy sessions ended. Indeed, Donovan emphasized to Plaintiff that the Company had a legal obligation to make an accommodation by modifying his work schedule. While Plaintiff complains that his supervisor insisted that he report to work by 6:00 p.m., there is no evidence that Jimenez's statements to Plaintiff about his start time had any effect: it is undisputed that during the months that Plaintiff was attending Wednesday therapy sessions, he routinely reported to work at 6:15 or 6:20 p.m., and suffered no repercussions.

14

The ADA contemplates that "employers and employees share responsibility" for engaging in the interactive process to identify an appropriate accommodation. Schroeder, 2009 WL 1748869, at *14 (citing 29 C.F.R. § 1630.9; Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 Fed. Appx. 943, 945-46 (2d Cir. 2008)). Where – as here – there has been an "alleged breakdown of the interactive process," courts must "'look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.'" Id. (quoting Beck, 75 F.3d at 1135). Where an employee abandons the interactive process, an employer cannot be held liable for failing to provide a reasonable accommodation. Durick v. New York City Dept. of Educ., No. 15 Civ. 7441 (BMC), 2016 WL 4385908, at *8 (E.D.N.Y. Aug. 17, 2016) (granting defendant summary judgment on failure to accommodate claim where plaintiff abandoned the interactive process by retiring).

Here, it is undisputed that the employer immediately granted Plaintiff the schedule accommodation he requested. While Plaintiff now contends that the accommodation granted was inadequate, he never brought this alleged inadequacy to the employer's attention at the time, even though the employer had made clear that it would grant whatever accommodation was necessary to permit Plaintiff to attend his therapy sessions. Under these circumstances, any inadequacy in the accommodation granted to Plaintiff cannot be attributed to the employer. Instead, any such inadequacy is attributable to Plaintiff's failure "to make reasonable efforts to help [the employer] determine what specific accommodations [were] necessary." Schroeder, 2009 WL 1748869, at *14; see also Durick, 2016 WL 4385908, at *8; Seabrook v. New York City Health and Hosps. Corp., No. 13 Civ. 4164(NRB), 2015 WL 273652, at *6 (S.D.N.Y. Jan. 20, 2015) ("[I]n light of the record of [Defendant's] acquiescence to [Plaintiff's] requests when

15

made, we cannot say that [Defendant] impeded the process of reasonable accommodation, and [Plaintiff's] claim is therefore dismissed."). Accordingly, Defendant's motion for summary judgment on Plaintiff's ADA failure to accommodate claim will be granted.

## B.   New York City Human Rights Law Claim

"A claim for failure to accommodate is a type of disability discrimination that can properly be raised under the NYCHRL." LeBlanc v. United Parcel Service, No. 11 Civ. 6983(KPF), 2014 WL 1407706, at *17 (S.D.N.Y. Apr. 11, 2014) (citing Tse v. New York Univ., No. 10 Civ. 7207(DAB), 2013 WL 5288848, at *10 (S.D.N.Y. Sep. 19, 2013)). Moreover, "[t]he NYCHRL . . . 'affords protections broader than the [ADA].'" Howard v. City of New York, 62 F. Supp. 3d 312, 323 (S.D.N.Y. 2014) (quoting Romanello v. Intesa Sanpaolo, S.p.A., 22 N.Y.3d 881, 884 (2013)). Accordingly, Plaintiff's "failure to establish a cognizable ADA disability [claim] . . . does not necessarily require dismissal of [his] identical . . . NYCHRL claim[]." Missick v. City of New York, 707 F. Supp. 2d 336, 354 (E.D.N.Y. 2010).

"'[T]he first step in providing a reasonable accommodation [under the NYCHRL] is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested.'" Stuart v. T-Mobile USA, Inc., No. 14-CV-4252 (JMF), 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015) (quoting Phillips v. City of New York, 66 A.D.3d 170, 176 (1st Dept. 2009), overruled on other grounds by Jacobson v. New York City Health and Hosp. Corp., 22 N.Y.3d 824 (2014)). "[U]nder the NYCHRL, once an employee requests an accommodation from his employer, it becomes the employer's duty, not the employee's, to engage in an 'interactive process' aimed at reaching a reasonable accommodation." LeBlanc, 2014 WL 1407706, at *18 (citing 9 N.Y.C.R.R. § 466.11(j)(4)). "[T]he City HRL unquestionably forecloses summary judgment where the employer has not

16

engaged in a good faith interactive process regarding a specifically requested accommodation."
Jacobson, 22 N.Y.3d at 837-38.

      "The standard [for liability] under the NYCHRL is liberal, but not boundless."
Leblanc, 2014 WL 1407706 at *13. Where the record shows that a defendant has engaged in an
interactive process with an employee concerning a requested accommodation, summary
judgment may – under appropriate circumstances – be granted. See, e.g., Stuart, 2015 WL
4760184, at *10-11 (granting defendant summary judgment where plaintiff had discussed with
defendant's human resources department his request to work from home, and the human
resources representative had suggested that plaintiff instead take intermittent FMLA leave).
"After all, the NYCHRL requires only that Defendants engage in an interactive process with the
disabled individual; it does not require that the individual be satisfied with that process or that
the process result in the individual's preferred accommodation." Id. at *11.

      Under the NYCHRL, an employer may engage in the "interactive process" in a
number of ways:  for example, the process "may involve 'meeting with the employee who
requests an accommodation, requesting information about the condition and what limitations the
employee has, asking the employee what he or she specifically wants, showing some sign of
having considered the employee's request, and offering and discussing available alternatives
when the request is too burdensome.'" Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 420
(S.D.N.Y. 2014) (quoting Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 218-29 (2d
Cir. 2001)). Here, it is undisputed that Plaintiff's request for a schedule accommodation was
immediately granted by the employer's human resources director, who arranged for Plaintiff's
Wednesday work schedule to be adjusted to account for his therapy sessions. If – as Plaintiff
now claims – the adjusted schedule was an insufficient accommodation, he could and should

have continued engaging in the interactive process and sought an even later start time on Wednesdays – a request that the record indicates would have been granted. Having accepted the accommodation that Defendant provided without complaint, Plaintiff may not now complain that the accommodation was inadequate.

Defendant's motion for summary judgment on Plaintiff's NYCHRL failure to accommodate claim will be granted.

## III.    PLAINTIFF'S RETALIATION CLAIMS

Plaintiff alleges that he was retaliated against because (1) he complained about Jimenez's sexual harassment; and (2) he requested an accommodation for his disability.

### A.    Title VII Retaliation Claim

"Title VII's antiretaliation provision prohibits an employer from discriminating against an employee for opposing any practice made unlawful by Title VII." Rivera v. Rochester Genesee Regional Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2012). To establish a prima facie case of retaliation, "an employee must show '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).

"The plaintiff's burden of proof as to this first step 'has been characterized as "minimal" and "de minimis."'" Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013) (quoting Jute, 420 F.3d at 173); see also Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citing Richardson v. New York State Dept. of Correctional Serv., 180 F.3d 426, 444 (2d Cir. 1999)). "In determining whether this initial burden is satisfied in a Title VII

18

retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Jute, 420 F.3d at 173 (citing Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987)).

"If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. "If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff,' and if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." Id. (quoting Burdine, 450 U.S. at 253) (internal citations omitted).

## 1. **Prima Facie Case**

To find that a plaintiff engaged in protected activity and that the employer knew about that activity, a court must find that "the employer . . . understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). Here, Plaintiff claims that he complained to Donovan about Jimenez's inappropriate behavior, including grabbing and slapping Plaintiff's buttocks, pinching his nipples, and kissing the back

19

of his neck. As described by Plaintiff, Jimenez's behavior constitutes unwanted, intimate physical contact. For purposes of its summary judgment motion, Defendant does not contend that it was unaware that Plaintiff's complaint was directed at conduct that Title VII prohibits. It is also clear that Plaintiff suffered an adverse employment action, given that his employment was terminated on January 13, 2013. See Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 240 (E.D.N.Y. 2014) ("'Examples of materially adverse employment actions include termination of employment . . . .'" (quoting Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)).

Accordingly, the only remaining issue is whether Plaintiff has adduced sufficient evidence to demonstrate a causal connection between his complaint about sexual harassment and his termination. "A causal connection between the protected activity and the adverse action may be demonstrated by showing '(1) direct proof of retaliatory animus directed against the [p]laintiff, (2) disparate treatment of similarly situated employees, or (3) that the retaliatory action occurred close in time to the protected activities.'" Elhanafy v. Shinseki, No. 10 Civ. 3192 (JG) (JMA), 2012 WL 2122178, at *17 (E.D.N.Y. June 12, 2012) (quoting Ashok v. Barnhart, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) (quoting McNair v. New York City Health and Hosps. Corp., 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001))); see also Beaumont v. Cablevision Sys. Corp., No. 10-CV-3585 (JG)(SMG), 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012) ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'") (quoting Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001))).

"Mere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a

prima facie case." Aka v. Jacob K. Javits Convention Ctr. of New York, No. 09 Civ. 8195(FM), 2011 WL 4549610, at \*9 (S.D.N.Y. Sept. 30, 2011) (citing El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932-33 (2d Cir. 2010); Simpson v. N.Y. State Dep't of Civil Serv., 166 Fed. Appx. 499, 502 (2d Cir. 2006)); see also Pinkard v. New York City Dep't of Educ., No. 11 Civ. 5540 (FM), 2012 WL 1592520, at \*6 (S.D.N.Y. May 2, 2012) ("[M]ere temporal proximity between a plaintiff's protected activity and an adverse employment action may, by itself, be sufficient to create an inference of retaliation for purposes of proving a prima facie case." (citing El Sayed, 627 F.3d at 932)); Bind v. City of New York, No. 08 Civ. 11105 (RJH), 2011 WL 4542897, at \*17 (S.D.N.Y. Sept. 30, 2011) ("'Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection.'" (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010))).

Here, Plaintiff testified that he complained to Donovan about Jimenez's sexual harassment in "September or October" of 2012, and it is undisputed that Plaintiff's employment was terminated on January 13, 2013. Accordingly, the time period between Plaintiff's complaint and the adverse employment action is three to four months. The Second Circuit has "not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation. . . ." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). While some courts have suggested that a two- to three-month lapse may be the "'outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation,'" Dudley v. New York City Housing Auth., No. 12 Civ. 2771(PGG), 2014 WL 5003799, at \*26 (S.D.N.Y. Sept. 30, 2014) (quoting Yarde v. Good Samaritan Host, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)), others have cautioned that

21

"because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record." Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 436 (E.D.N.Y. 2009).

Under the circumstances of this case, the temporal proximity is sufficient to give rise to an inference of causation. Although Plaintiff's employment was not terminated until January 13, 2013, his termination came after a series of written warnings that began on October 2, 2012, and in which Jimenez played a part. A reasonable jury could find that Plaintiff rebuffed Jimenez's sexual advances and complained about Jimenez's sexual harassment in September or October 2012, and in the two months that followed, Defendant issued three written warnings to Plaintiff concerning alleged workplace misconduct.[9]

---

[9] Defendant argues that Plaintiff has not demonstrated that the first written warning – issued on October 2, 2012 – came after his sexual harassment complaint, because Plaintiff testified that he made the sexual harassment complaint in September or October 2012. (Def. Reply Br. (Dkt. No. 50) at 8 n.1) There is no evidence that Plaintiff's sexual harassment complaint was made after October 2, 2012, however, and this Court is obligated at this stage of the proceedings to draw all factual inferences in Plaintiff's favor. Given the evidence that Jimenez told Plaintiff that he would "get [Plaintiff] fired," and given that Jimenez issued the first written warning (Def. Appx., Ex. 2 (Associate Corrective Action Report (Dkt. No. 49-2) at ECF 42), it is a fair inference that Jimenez issued the first written warning in retaliation for Plaintiff's sexual harassment complaint.

A reasonable jury could also conclude that Jimenez issued the first written warning in retaliation for Plaintiff rebuffing Jimenez's sexual advances. The Second Circuit has declined to decide "whether merely rejecting a sexual advance is cognizable under the federal or state counterparts to the NYCHRL," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 115 n.12 (2d Cir. 2013), and district courts in this Circuit are split on the issue. See Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 188-89 (E.D.N.Y. 2012) (noting the disagreement and citing cases). This Court concludes that rejecting a supervisor's sexual advances is "protected activity" sufficient to satisfy the first element of a prima facie retaliation case. "The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination. Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct." Little v. National Broadcasting Co., Inc., 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002) (internal citations omitted); see also Ogden v. Wax Works, Inc., 214 F.3d 999, (8th Cir. 2000) (finding that employee who rejected supervisor's advances "engaged in 'the most basic form of protected activity' when she told her supervisor

22

The fact that Defendant issued three written warnings to Plaintiff during this two month period is particularly suggestive of retaliatory animus, given that Defendant had issued no such warning to Plaintiff in the six months that preceded his sexual harassment complaint. The inference of retaliatory animus is also supported by the fact that the first written warning was issued shortly after (1) Plaintiff had rejected his supervisor's sexual advances; (2) Plaintiff complained about his supervisor's sexual harassment; and (3) the supervisor who had allegedly sexually harassed Plaintiff warned him that he would get Plaintiff fired. Jimenez's direct involvement in at least two of the written warnings further supports a finding of retaliatory animus. Finally, it was Jimenez who brought Plaintiff's three co-workers to Donovan – the Human Resources Director – in January 2013, so that they could report alleged threats that Plaintiff had made.

In sum, although Plaintiff's termination took place three to four months after he engaged in protected activity, a reasonable jury could find – under the circumstances of this case – that the termination was the culmination of a series of retaliatory written warnings that were initiated shortly after Plaintiff rejected his supervisor's sexual advances and complained about sexual harassment. Given these facts, the Court concludes that the temporal proximity is sufficient to give rise to an inference of causation.[10]

---

. . . to stop his offensive conduct"); Johnson v. Medisys Health Network, No. 10-CV-1596 (ERK)(WP), 2011 WL 5222917, at *16 (E.D.N.Y. June 1, 2011) ("There is no reason to disagree with the view of the majority of courts that allegations that an employee consistently refused her supervisor's sexual advances constitutes 'protected activity' for purposes of a retaliation claim." (citing Little, 210 F. Supp. 2d at 386)).

[10] Defendant's argument that its schedule accommodation rebuts Plaintiff's Title VII retaliation claim is misguided. In granting Plaintiff's accommodation request, Defendant – as Donovan articulated – was merely attempting to comply with the law governing disability discrimination. The fact that Defendant granted Plaintiff's accommodation request in mid-September does not answer the question of whether Mark employees retaliated against Plaintiff in October and November 2012, or in January 2013.

### 2.    Defendant's Non-Discriminatory Reason
### for Terminating Plaintiff's Employment

Because Plaintiff has made out a prima facie case of discrimination, "the burden

of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for the

[adverse employment] action." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 316-

17 (2d Cir. 1999) (citations omitted). "'[T]he defendant must clearly set forth, through the

introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact,

would support a finding that unlawful discrimination was not the cause of the employment

action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at

254-55 and n.8 (1981)) (emphasis in St. Mary's).

Here, Defendant contends that Plaintiff was terminated because he threatened

three of his co-workers. Donovan – the Mark's Human Resources Director – interviewed the

three complainants and Plaintiff, and she found the three co-workers more credible than Plaintiff.

Defendant further notes that Plaintiff had received four written warnings for workplace

misconduct before the threat issue emerged, and therefore the alleged threats were "merely the

latest in a long string of behavioral issues and performance deficiencies during his employment

at the Mark." (Def. Sum. J. Br. (Dkt. No. 48) at ECF 21)

This Court concludes that Defendant has articulated a non-discriminatory reason

for terminating Plaintiff's employment.

### 3.    Pretext

Where, as here, a defendant has offered a legitimate, non-discriminatory reason

for an adverse employment action, the burden shifts back to Plaintiff to demonstrate that the

reason offered by the defendant was a pretext for discrimination. Plaintiff must "produce not

simply some evidence, but sufficient evidence to support a rational finding that the legitimate

24

non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [retaliatory discrimination] was the real reason for the [employment actions]." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted) (alterations in original).

"In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.'" Id. "[A] plaintiff in a Title VII action need not disprove a defendant's proffered rationale for its adverse intentions in order to prevail. 'The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity.'" Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (internal citations omitted) (quoting Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).

"[A] plaintiff alleging retaliation in violation of Title VII must [also] show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." Zann Kwan, 737 F.3d at 845. "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Id. at 846.

Here, as to pretext, Defendant argues that Plaintiff has "no evidence" to support his allegation that the co-worker complaints against him were the result of employer pressure. (Def. Sum. J. Br. (Dkt. No. 48) at ECF 21) A plaintiff is not required, however, to present direct evidence of pretext in order to create a material issue of fact as to a defendant's proffered non-retaliatory justification for termination. See Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001)

25

(a plaintiff may demonstrate pretext "through either direct or circumstantial evidence"). Indeed, as noted earlier, "[i]n cases based on allegations of discriminatory retaliation, courts must use 'an extra measure of caution' in determining whether to grant summary judgment[,] 'because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence.'" Thompson, 2012 WL 1145964, at *4 (quoting Schiano, 445 F.3d at 603).

Here, Plaintiff has presented circumstantial evidence that is sufficient to create a question of fact as to whether Defendant's non-retaliatory justification for Plaintiff's termination was mere pretext. There is evidence, for example that Jimenez – the manager of the Mark, Plaintiff's direct supervisor, and the alleged sexual harasser – told Plaintiff that he would "get [Plaintiff] fired" after Plaintiff rejected his sexual advances and reported the sexual harassment. Jimenez played a central role in at least two of the written warnings that Defendant now relies on (see Def. Sum. J. Br. (Dkt. No. 48) at 21), and it was Jimenez who brought to Donovan the three co-workers who alleged that Plaintiff had threatened him. Given the temporal proximity of Jimenez's actions to Plaintiff's rejection of his sexual advances and report of his sexual harassment, and the fact that Plaintiff never received workplace discipline until he rejected Jimenez's sexual advances and reported his sexual harassment, a reasonable jury could find that Jimenez acted with retaliatory animus. See Zann Kwan, 737 F.3d at 847 (although "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage[,] . . . a plaintiff may rely on evidence comprising [his] prima facie case, including temporal proximity, together with other evidence . . . to defeat summary judgment at that stage"); see also Jute, 420 F.3d at 180 (plaintiff's "proffered evidence supporting a strong temporal connection between her involvement in protected activity on the one hand, and instances (albeit, not actionable) of

26

retaliation on the other," provided a basis for a trier of fact to conclude that the defendant's legitimate, non-retaliatory explanation was pretextual).

Defendant argues, however, that Jimenez's alleged retaliatory motivation cannot form a basis for liability, because he "did not have any influence on the Mark's decision to terminate Plaintiff's employment." (Def. Reply Br. (Dkt. No. 50) at 6-7) Although Donovan, and not Jimenez, was the final decision maker, a reasonable jury could find that Jimenez had significant influence over the chain of events that resulted in Plaintiff's termination. "'[T]he impermissible bias of a single individual at any stage of the . . . [decision making] process may taint the ultimate employment decision in violation of Title VII.'" Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 566 (S.D.N.Y. 2010) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)) (alterations in original). "Therefore, 'even absent evidence of illegitimate bias on the part of the decision maker,' a plaintiff may establish that an adverse action was taken because of unlawful intent by showing that an 'individual shown to have the impermissible bias played a meaningful role in the . . . [decision making] process.'" Id. (quoting Bickerstaff, 196 F.3d at 450); see also Holcomb v. Iona College, 521 F.3d 130, 143 (2d Cir. 2008) (denying summary judgment on Title VII discrimination claim where the jury could infer that supervisors had urged decision maker to terminate plaintiff because he was in an interracial relationship); cf. Vasquez v. Empress Ambulance Servs., No. 15-3239-cv, 2016 WL 4501673, at *4, *6 (2d Cir. Aug. 29, 2016) (finding Title VII retaliation claim adequately pled where the defendant entity "was itself negligent in allowing [a co-worker's] false allegations, and the retaliatory intent behind them, to achieve their desired end").

Here, the evidence proffered by Plaintiff is sufficient to create a material issue of fact as to whether Jimenez had retaliatory intent and – through the written warnings and his

interaction with Plaintiff's co-workers – was able to manipulate the employer's decision making process so as to make the employer a "conduit for his retaliatory intent." Vasquez, 2016 WL 4501673, at *4; see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (finding a material issue of fact as to whether defendant's alleged non-retaliatory reason for discharging plaintiff was pretextual where "evidence supporting [defendant's] asserted non-retaliatory reason for discharge both was generated by [plaintiff's] alleged harassers . . . and followed [plaintiff's] initial inquiry . . . regarding sexual harassment"); Ibok v. Sec. Ind. Automation Corp., 369 Fed. Appx. 210, 213 (2d Cir. 2010) ("Evidence of pretext may include, among other things, the fact that (1) the plaintiff's alleged harasser generated much of the evidence supporting the non-retaliatory justification; (2) evaluations of the plaintiff post-dating the protected activity contradict earlier evaluations; and (3) there is a strong temporal relationship between the protected activity and the adverse action." (internal citations omitted)).

     Plaintiff has offered evidence that he rejected Jimenez's sexual advances and complained about Jimenez's sexual harassment, and that Jimenez threatened that he would "get [Plaintiff] fired." Jimenez then issued a written warning to Plaintiff, and served as a witness for purposes of a second written warning. In this context, a reasonable jury could find that – when Jimenez brought Plaintiff's co-workers to Donovan to complain about Plaintiff's conduct – this act was another step in Jimenez's campaign of retaliation against Plaintiff. See Mugavero, 680 F. Supp. 2d at 566-67 (denying defendants judgment as a matter of law on retaliation claim where plaintiff's supervisor – who allegedly was motivated by retaliatory intent – brought plaintiff's alleged errors to the attention of managers who terminated plaintiff's employment) (citing Back v. Hastings On Hudson Free Sch. Dist., 365 F.3d 107, 126, 126 n.18 (2d Cir. 2004)

(lack of evidence that ultimate decision maker was biased did not entitle defendant to summary judgment where biased direct supervisors made "numerous accusations of poor performance" that were "overblown and pretextual" and could be found to have "fatally taint[ed] the pool of information" about plaintiff); Owens v. New York City Hous. Auth., 934 F.2d 405, 410 (2d Cir. 1991) (discriminatory comments by individuals who had "substantial influence of over [plaintiff's] employment" were sufficient to "raise a genuine issue of fact on the issues of pretextuality")).

Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim will be denied.

## B.   ADA Retaliation Claim

The Complaint also pleads a claim for retaliation under the ADA. (Cmplt. (Dkt. No. 1)) "'Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases.'" Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 250 (S.D.N.Y. Mar. 31, 2015) (quoting Treglia, 313 F.3d at 719). Defendant argues that Plaintiff has failed to demonstrate a causal connection between his request for an accommodation and his termination.[11]   (Def. Sum. J. Br. (Dkt. No. 48) at 8)

---

[11] Defendant also argues that Plaintiff's need for a schedule accommodation had ended by the time he was terminated, and accordingly, Plaintiff cannot establish a causal connection between his request for an accommodation and the termination of his employment. (Def. Sum. J. Br. (Dkt. No. 48) at 20)   This argument is not well founded.   The ADA broadly prohibits retaliation against an individual who asserts rights under the ADA:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). Nothing in the ADA retaliation statute suggests that its reach is limited to the time period during which a plaintiff is receiving an accommodation guaranteed under the

29

Plaintiff has not addressed this argument in his opposition brief. "Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" Hardy v. City of New York, 732 F. Supp. 2d 112, 125 (E.D.N.Y. 2010) (quoting Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)); see also Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."). Under the circumstances here, the Court concludes that Plaintiff has abandoned his ADA retaliation claim. Accordingly, Defendant's motion for summary judgment on Plaintiff's ADA retaliation claim will be granted.

---

ADA. Moreover, retaliation statutes generally prohibit retaliation against an employee for engaging in protected activity, whether or not the employee was successful in obtaining an accommodation, and whether or not the need for the accommodation had passed by the time the retaliatory act took place. Accordingly, courts routinely deny defendants summary judgment in retaliation cases even where the alleged retaliation took place after the plaintiff's need for an accommodation had passed. See, e.g., Clark, 96 F. Supp. 3d at 262 ("Plaintiff's claim that [Defendant] retaliated against her for taking disability leave satisfies the first element [of a prima facie retaliation claim] because '[r]equesting a reasonable accommodation of a disability is an ADA protected activity.'" (citing Rodriguez v. Atria Senior Living Grp., Inc., 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012))); Terry v. Cty. Of Cayuga, No. 5:11-CV-1296 (LEK/ATB), 2013 WL 5464395, at *4-5, *15 (N.D.N.Y. Sept. 30, 2013) (denying defendant's summary judgment motion where Plaintiff was terminated on the day she returned from FMLA leave); Cooper v. New York State Nurses Ass'n, 847 F. Supp. 2d 437, 448, 450 (E.D.N.Y. 2012) (denying defendant summary judgment on FMLA claim where plaintiff was terminated two months after she returned from FMLA leave); Briggs v. Women in Need, Inc., 819 F. Supp. 2d 119, 127 (E.D.N.Y. 2011) (explaining that the Pregnancy Discrimination Act protects employees from retaliatory termination "while [the employee is] pregnant, on maternity leave, or soon after returning from maternity leave"); see also Lovejoy-Wilson, 263 F.3d at 222-24 (denying defendant summary judgment on plaintiff's retaliation claim where defendant had refused to provide the requested accommodation).

## C.    NYCHRL Retaliation Claim

"New York courts have broadly interpreted the NYCHRL's retaliation

provisions." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir.

2013). "'[N]o challenged conduct may be deemed nonretaliatory' unless 'a jury could not

reasonably conclude from the evidence that such conduct was . . . "reasonably likely to deter a

person from engaging in protected activity."'" Id. (quoting Williams v. New York City Hous.

Auth., 872 N.Y.S.2d 27, 34 (2009)). "This 'assessment [should] be made with a keen sense of

workplace realities, of the fact that the "chilling effect" of particular conduct is context-

dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory

conduct.'" Id. (quoting Williams, 872 N.Y.S.2d at 34). "[T]o the extent that the defendant has

failed to show it is entitled to summary judgment under McDonnell Douglas, it would not be

entitled to summary judgment under the more expansive standard of the NYCHRL." Zann

Kwan, 737 F.3d at 843 n.3 (citing Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159,

181 (S.D.N.Y. 2011)).

Here, this Court has denied Defendant's motion for summary judgment on

Plaintiff's Title VII retaliation claim. Given the "more expansive standard of the NYCHRL," id.,

Defendant's motion for summary judgment on Plaintiff's NYCHRL retaliation claim is likewise

denied to the extent that claim is premised on the same conduct underlying Plaintiff's Title VII

retaliation claim.

## IV.    MITIGATION

"Victims of employment discrimination are required to mitigate their damages."

Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998). Generally, the employer –

not the employee – bears the burden of proving "'(1) that suitable work existed, and (2) that the

31

employee did not make reasonable efforts to obtain it.'"  Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir. 2005) (quoting Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997)).  "[A]n employer 'is released from the duty to establish the availability of comparable employment[, however,] if it can prove that the employee made no reasonable efforts to seek such employment.'"  Id. (quoting Greenway, 143 F.3d at 54).

   Here, Defendant argues that Plaintiff did not mitigate his damages because – after his employment at the Mark was terminated – he quit various restaurant positions and did not accept two LPN positions at nursing homes.  (Def. Sum. J. Br. (Dkt. No. 48) at ECF 22-23) Defendant does not dispute, however, that Plaintiff worked in a variety of jobs after the termination of his employment at the Mark, and that he unsuccessfully sought other employment.

   Given that Plaintiff has had employment since his termination, and given the evidence of his efforts to find work, Defendant is not entitled to judgment as a matter of law that Plaintiff has failed to mitigate his damages.  Under the circumstances here, it is a jury question whether Plaintiff made reasonable efforts to mitigate his damages.  See Longo v. Breda Transp., Inc., No. 04 Civ. 10241(GBD), 2008 WL 852052, at *4 (S.D.N.Y. Mar. 31, 2008) (denying judgment as a matter of law on the issue of mitigation where plaintiff had "testified about his efforts to seek new employment, and that his search was fruitless"; "[w]hether these efforts were reasonable was a question for the jury"); Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 696 (2d Cir. 1998) ("The question [of] whether an employee has made reasonably diligent efforts is one of fact for the jury").

   Accordingly, Defendant's motion for summary judgment on the issue of Plaintiff's failure to mitigate his damages will be denied.

## CONCLUSION

Defendant's motion for summary judgment is granted as to (1) Plaintiff's claim for aiding and abetting discrimination under the NYCHRL, (2) failure to accommodate claims under the ADA and the NYCHRL, and (3) retaliation claim under the ADA. Defendant's motion is otherwise denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 47).

It is further ORDERED that trial in this matter will begin on **December 5, 2016**, at 9:30 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse. The joint pretrial order, motions in limine, proposed voir dire, and requests to charge are due on **October 12, 2016**. Any responsive papers are due **October 26, 2016**.

Dated: New York, New York
      September 15, 2016             SO ORDERED.

Paul G. Gardephe
United States District Judge

33